Walter J. Mahoney, J.
This is a special proceeding by authority of section 330 of the Election Law asking the court to validate a petition designating the petitioner as a candidate of the Conservation Party, for the office of Representative in *14 Congress for the 39th Congressional District of the State of New York, to be voted upon at the general election on November 3, 1970.
The petitioner in this proceeding requests that the Board of Elections (1) be directed to place the name of said petitioner upon the official ballot and voting machines for the afore-mentioned general elections as a candidate of the Conservation Party; or (2) in the alternative, petitioner requests that, in the event the court finds the name Conservation Party in violation of subdivision 4 of section 138 of the Election Law, the Board of Elections be ordered to permit petitioner to substitute a legal and valid name and to place the petitioner’s name upon the official ballot and voting machines as a candidate for said office under the substituted name.
This proceeding was instituted by an order to show cause dated September 8,1970 and all of the respondents appeared by counsel and conceded jurisdiction.
The petition in question was filed with the Board of Elections on or about August 21, 1970 and the petitioner accepted the nomination of the Conservation Party on August 25.
On or about September 2, 1970, the Board of Elections approved the designating petition of the petitioner as to the validity of the requisite signators. The minutes of said meeting, however, state that the objections by the Chairman of the Conservative Party to the petition in question was a matter before the Secretary of State and not within the jurisdiction of the Erie County Board of Elections.
Subsequently on September 5, 1970, the Board of Elections again met relative to the petitions in question and upon consideration of a previous decision of the Secretary of State in a somewhat analogous matter, ruled that the petitions were violative of subdivision 4 of section 138 of the Election Law in that the names “ Conservation Party ” and “ Conservative Party ” were too similar.
Actually this court is faced with two questions: (1) should the afore-mentioned decision of the Erie County Board of Elections relative to the objections filed by respondent under subdivision 4 of section 138 be sustained; and (2) if so, should the petitioner’s name be permitted on the ballot and voting machines under another party designation.
The above questions can only be answered if it is possible to determine the intent of the Legislature in enacting subdivision 4 of section 138 of the Election Law, which provides: ‘ ‘ The name selected for the independent body making the nomination shall *15 be in the English language and shall not include the name or part of the name, or an abbreviation of the name or of part of the name, of a then existing party. The name and emblem shown upon such petition shall conform to the requirements of section twenty, relating to party names and party emblems. If such a petition shall not show an emblem, or the petition shall fail to select a name for such independent body, the officer or board in whose office the petition is filed shall select an emblem or name, or both to distinguish the candidates nominated thereby, except that if such petition be for the nomination of a candidate or candidates to be voted for by the voters of the entire state, the secretary of state shall select an emblem, or name, or both, to distinguish the candidates of the independent body named in the petition, throughout the state.”
Also in any such analysis we must consider the verbiage of section 20 of the Election Law which states, that: u The name of a party shall be in the English language and shall not include the worlds ‘ American,’ 1 United States,’ ‘ National,’ 1 New York State, ’ ‘ Empire State, ’ or an abbreviation thereof, nor the name or part of the name, or an abbreviation of the name, of an existing party, except that the provisions hereof shall not apply to or affect any party now using such words in its name.”
The intent of the Legislature in enacting the statutes involved is beyond dispute; namely, an independent political party should not be permitted to obtain use of a name which would possibly confuse the voters in the mistaken belief that the new, or independent party, is in fact a legal part or segment of an already existing political party.
It may be observed1 that the afore-mentioned objective, laudable in purpose, seeks to avoid confusion on the part of the voters and to avoid, by implication, the possibility of a new and independent party benefiting from the efforts of an established party presumably based upon years of espousing its principles and candidates.
Understandably, the courts have been most careful to protect at least the readily apparent legislative intent and to refrain from approving many of the ingenious efforts by various independent parties to use some variation of the names of already existing parties.
However, a careful perusal of the pertinent decisions seems to indicate that our appellate courts have not definitively passed upon the unusual facts, unique in character, now before us for decision.
The majesty of our judicial system, by provident design, is fortunately ever available to pass upon serious matters affecting *16 the right of independent parties to challenge existing political parties, which are, in turn, ever seeking to preserve, or change their position with the electorate.
Involved in the present proceeding is the peripheral but monumental question of the court’s obligation to protect the efforts of independent voters in challenging the existing system. (It should be noted here that should the decision of the Board of Elections be sustained then petitioner’s name will not appear on the ballot at the general election in November.) At this point we may well query, should our judiciary, under the present unique set of facts, deny the right of independent voters to make such challenge by a literal, or perhaps,, stultified interpretation of the law, or, should the judiciary, in its ever constant respect for tradition and precedent, always be sensitive to the ‘ ‘ winds of change,” knowing that only such a radical combination can protect us from possible anarchy.
It would seem unquestioned that we must, if legally permissible, adopt the latter course in the interest of justice and preservation of our democratic form of government.
With profound respect for judicial and quasi-judicial opinions that differ, this court will endeavor to rationalize its conclusions, since we firmly believe that our highest courts will soon put conjecture to rest and ineluctably decide the matter before us by establishing, for prospective political candidates, guidelines that are reasonable, understandable, and readily applicable to any similar situations that may arise in the future.
To merely place in writing the names “ Conservative Party ” and “ Conservation Party ”, in this court’s opinion, is to indicate the similarity, to the possible point of confusion in the minds of the voter if faced with such a dilemma. The Secretary of State of New York, under date of September 4, 1970, in an analogous situation stated: “ It is apparent that the names are almost identical except for the last two letters and the names are so similar that the tendency to confuse and mislead voters and the general public is readily apparent.”
In any discussion of existing case law deemed pertinent to the issues herein, it is significant that all contestants in this proceeding would appear to put reliance upon their respective interpretations of two keystone cases (viz: Matter of Donnellon v. Heffernan, 193 Misc. 97, affd. 274 App. Div. 880, affd. 298 N. Y. 656; Matter of Marcantonio v. Heffernan, 192 Misc. 868, affd. 274 App. Div. 880, affd. 298 N. Y. 661). It is also not without significance that affirmances in said cases by the Appellate Division and the Court of Appeals were without opinion.
*17 The question raised in said Donnellon and Marcantonio cases was whether the attempted use of the name 1 ‘ United Laborite Party” violated the statute relative to a then existing party named the “ American Labor Party ”.
■Special Term Justice Sohbeiber in the Marcantonio decision (supra), in construing the intent and purpose of the pertinent section of the Election Law there involved and being the same provision as now 'before this court, observed at page 869:£ £ was obviously intended to prevent all possibility of confusion in the minds of the voters in connection with the election machinery.”
In ruling against the petition, the court continued at page 870 : 1 ‘ There is a substantial difference between the use of such portions of an existing party’s name and the adoption here of the most important and vital part of the name of the American Labor Party, viz., the word £ Labor ’ ”.
Special Term in the Donnellon case (supra) also considered the petitioner’s request to the Board of Elections to substitute the name ‘1 United Local Party ’ ’ and to accept petitions under that name. Said request being denied, the court stated at page 98:££ The only statutory authority in the board to supply a name is limited to the instance where no party name appears on the petition.”
The court went on to state: ‘ ‘ Where,, as here, there is no disenfranchisement, as the signers of the petition may all vote for all their candidates under existing nominations, it is quite unnecessary for the court to fill in supposed gaps in the Election Law whether these exist unintentionally or by design.” The afore-mentioned language of the court would seem to indicate a question as to what its decision would have been if the petitioner, or candidate involved, was not on the ballot under another name.
The apparent dilemmas in the afore-mentioned cases, as limited to the facts therein, were settled by the Court of Appeals when it affirmed both cases (supra).
The Reporter’s notes in both of the Court of Appeals decisions heretofore mentioned significantly contain the language which this court deems important in its consideration of the case at hand.
We are, of course, not unaware of the Matter of Carr (94 App. Div. 493). This court respectfully disagrees with that opinion and believes, that, in the absence of fraud or bad faith on the part of the petitioner, the more enlightened position should be that the power to substitute the name of another party in such instance is inherent in the statute and one that was, in fact, *18 intended by the Legislature where disenfranchisement would result.
It is apparent from the foregoing that the present state of the law is at best uncertain, as evidenced by the decisions in the following cases: Matter of Bailey v. Incorporated Vil. of Lindenhurst (63 Misc 2d 518) decided March 11, 1970, and Matter of Ottinger v. Lomenzo (64 Misc 2d 103) decided September 16, 1970.
The court in Bailey (supra) was faced with the situation where the Conservative Party challenged the right to the use of the label “ Conservation Party ” by candidates seeking office as Village Trustees. The court dismissed the challenge of the Conservative Party in the following language (p. 520): “ The general public is so cognizant of the meaning of conservation today that even an elementary school child would have no difficulty in defining its meaning. * * * Certainly no one today would think of the word ‘ conservative ’ and 1 conservation ’ as being synonymous.”
Then too, the Albany County Trial Term in the Ottinger case (supra) stated in reference to the same two words: ‘ ‘ That they are similar in spelling and, perhaps,, in connotation is undeniable * * * However, it is similarly undeniable that each has taken on a special, colloquial meaning that sharply distinguishes one from the other.” (P. 104.)
The learned Justice then proceeds with the purported current meanings of the respective words, not in our dictionary sense, but in their alleged current everyday usage.
This court does not feel that the colloquial usage of terms surmounts the confusion inherent in the spelling of the respective names and their meanings as described by recognized dictionary authorities.
This court’s analysis of the case law relied upon by the contestants in this proceeding is similarly conclusive that there has been no controlling definitive decision in modern times of the pertinent law herein by the Court of Appeals or any Appellate Division.
By analogy we feel that the Legislature is always zealous of its prerogative in protecting the electorate, by legislation, from being denied the opportunity to vote for the candidates of their choice. Basically all of the decisions mentioned above involve cases wherein the petitioner’s name could be voted upon at the general election even though under the name of a different party. Here, at the present time, the petitioner does not enjoy that assurance.
*19 The verbiage of the afore-cited cases indicates to this court that the decisions may well- have been different if the ensuing result had been the total elimination of the name of the petitioner from the ballot at the general election. While it is to be acknowledged that neither the Legislature nor the judiciary of this State countenance the denial to the electorate of the opportunity of voting for candidates of their choice by reason of technical statutory interpretation, it is, nevertheless, the opinion of this court, that, the party names in question, i.e., 11 Conservation ’ ’ and “ Conservative ” are so similar in spelling, derivation, and meaning that resultant confusion in the minds of the voters is inevitable. Therefore, petitioner should not be permitted use on the ballot of the name “ Conservation Party.”
However, cognizant of the statutory admonition and mandate for liberal construction in proceedings such as now before the court (Election Law, § 330), and, in the belief that the spirit of the existing statutory provisions as well as pertinent case law calls for a decision assuring petitioner’s name on the ballot at the general election under an acceptable party name to be selected by him, we direct the respondent, Board of Elections of the County of Erie, to place petitioner’s name on the ballot and voting machines as a candidate in the coming general election for the office of Representative in Congress for the 39th Congressional District of the State of New York, under a party name to be selected by him.